IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **ANTHONY BOWDEN,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| **VS.** : | |
| : | NO. 5:11-CV-437-MTT-MSH |
| : | |
| **NATHANIEL FAUQUIER, et. al.** : | |
| : | |
| **Defendants** : | |

_____

## ORDER & RECOMMENDATION

Plaintiff Anthony Bowden, a pretrial detainee at the Peach County Jail in Fort Valley, Georgia has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 and paid the initial partial filing fee as required by this Court. The Court has now conducted a review of Plaintiff's Complaint[1] as required by 29 U.S.C. § 1915A(a) and finds that, at this stage, it would be premature to dismiss Plaintiff's claims for damages against Officers Fauquier and Bowman and for injunctive relief against Dr. Ru. It is accordingly ORDERED that service be made as to those Defendants.

Plaintiff's Complaint, however, fails to arguably state a claim for damages against Defendants Smith, Sellers, Elder and Ru. It is, therefore, RECOMMENDED that all claims for damages against those Defendants be DISMISSED under 28 U.S.C. §1915A(b)(1) for failure to state a claim.

---

[1] For the purpose of this review, Plaintiff's "Complaint" is construed to include all allegations and attachments in the original complaint (ECF No. 1), Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 8), and Plaintiff's first and second supplements (ECF No. 9 & 12).

## I. Standard of Review

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. *See* 28 U.S.C. § 1915A(a). In so doing, the district court must accept all factual allegations in the Complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings, like the one in this case, are also "held to a less stringent standard than pleadings drafted by attorneys" and must be "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nonetheless, a district court may still dismiss a prisoner complaint after the initial review if it finds that the complaint (1) "is frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b); *see also* 28 U.S.C. §1915(2)(B) (requiring the same of prisoners proceeding *in forma pauperis*).

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint is thus properly dismissed by the district court *sua sponte* if it is found to be "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In other words, the complaint must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

To state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003); *see also* 28 U.S.C. § 1915A(b).

## II.     Preliminary Review of Plaintiff's Complaint

The Complaint alleges that, on July 30, 2011, Plaintiff led police officers in a high-speed chase. The chase concluded only after Plaintiff's car left the roadway, struck several trees, and finally came to an uncontrolled rest on the side of the road. According to the police report,[2] Plaintiff was suspected to have been under the influence of drugs or alcohol at that time. One the officers, Officer Bowman, later testified that he was struck by Plaintiff's car door during or after the high-speed chase. This testimony apparently led to Plaintiff being charged with both "D.U.I" and "aggravated assault on a police officer."

---

2 When conducting a §1915A review, the district court may consider not only the complaint but also the exhibits attached to it. *See* Fed. R. Civ. P. 10(c). Furthermore, "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Tucker v. National Linen Service Corp.*, 200 F.2d 858, 864 (5th Cir. 1953).

At some point after his arrest, Plaintiff was placed in the back seat of Officer Nathanial Fauquier's police car for transport. Plaintiff's hands were cuffed behind his back, and he was not secured by a seatbelt. Plaintiff thus suffered injuries when Officer Fauquier's vehicle collided with another car "head-on." The Complaint alleges that, immediately before the collision, Officer Fauquier was driving "in excess of eighty miles an hour" and "on the wrong side of the road." Plaintiff further alleges that, despite his high rate of speed and the fact that they were driving on an unlit rural roadway, Officer Fauquier did not activate his emergency blue lights. Plaintiff contends that Officer Fauquier's driving was both "negligent" and "reckless."

Immediately after the collision, Officer Fauquier checked on the occupants of the other vehicle and returned to check on Plaintiff. Plaintiff advised Officer Fauquier that he was "hurt." The Complaint alleges that Plaintiff was in fact "seriously hurt" and was "in extreme pain immediately after the impact." Plaintiff "felt like he had lost all strength and movement in the upper right side of his body."

A few minutes later, Officer Fauquier returned, opened the rear door, and ordered Plaintiff to "Get up!" Plaintiff replied, "I'm can't. I'm hurt. I can't move. I think you broke my shoulder." Officer Fauquier left and returned again ordering Plaintiff to "Get up!" Plaintiff responded in the same way, advising the officer that he "was hurt." Two of these responses were also heard by Officer Bowman, who happened to be nearby.

When Plaintiff failed to comply with his orders, Officer Fauquier forcibly "snatched" Plaintiff from the vehicle and placed him in Officer Bowman's police car. None of the officers at the scene offered Plaintiff any medical care despite his repeated

4

complaints. Defendant Officer Smith heard Fauquier's radio call and was thus presumably aware of the collision, but he did nothing to ensure that Plaintiff was provided medical care.  Georgia State Patrol Officer J. Sellers apparently responded to the scene after Plaintiff was removed from the accident and completed a "traffic crash report."[3]  Plaintiff alleges that this report includes "false documentation," though it does note Plaintiff's "complaint of neck pain" after the accident.

Plaintiff was subsequently transported to the Peach County Jail.  Despite the fact that he was still "suffering extreme pain," officers placed Plaintiff in a holding cell for six hours without providing him any medical care.  A week later, on August 6, 2011, Plaintiff submitted a medical request form.  An unnamed nurse examined Plaintiff's collarbone and shoulder that same day and indicated that she would request x-rays.  This nurse allegedly submitted the request for treatment to her supervisor, Defendant Nurse Elder.  Elder then advised Plaintiff that the Byron Police Department was the entity responsible for his medical care.  At Plaintiff's request, both the unnamed nurse and Nurse Elder contacted the Byron Police Department multiple times, but all of their requests for additional medical treatment were denied.

Plaintiff was finally seen by a physician, Defendant Dr. Ru, on August 31, 2011.  Dr. Ru listened to all of Plaintiff's complaints and examined his wrist, elbow, and collarbone.  According to the Complaint, Dr. Ru asked Plaintiff to "turn his hands over and under" multiple times and thereby determined that Plaintiff's wrist did not need to be

---

3  This report was attached to Plaintiff's "Motion for Leave to File an Amended Complaint" (ECF No. 8).

x-rayed. Dr. Ru also examined Plaintiff's elbow and stated that it appeared "normal." Dr. Ru then examined Plaintiff's "collar and sternum area," observed his breathing, and determined that "nothing was wrong" with Plaintiff's collarbone. Dr. Ru nonetheless ordered x-rays of Plaintiff's elbow and collarbone, and when the x-rays later showed that Plaintiff suffered no broken bones, Dr. Ru simply prescribed Plaintiff pain medication.

Plaintiff contends, however, that he continues to suffer from "migraines," a quivering eye, "numbness," "tingling," and "weakness." The Complaint alleges that Plaintiff's "collar bone, elbow, and wrist are still visibly swollen, disfigured, and sore." Plaintiff believes that he requires treatment from "bone, nerve, and spine care specialists" because of the "serious bodily damage" he suffered as a result of the "head-on collision." He has thus filed the present action, seeking injunctive relief and compensation from Officers Fauquier, Bowman, Smith, and Sellers, Nurse Elder, and Dr. Ru.

## DISCUSSION

Based upon the allegations in the Complaint, the Court presumes that Plaintiff has intended to state constitutional claims based upon an alleged (1) deliberate indifference to his personal safety and (2) denial or inadequate provision of medical care. "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *see also Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir. 1988). "[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001) (en banc). Thus, decisional law involving

prison inmates applies equally to Plaintiff's claims. *See Cottrell*, 85 F.3d at 1490.  With this mind, each of Plaintiff's claims will be addressed in turn below.

    A.  <u>Claim alleging Deliberate Indifference to Plaintiff's Safety</u>

Plaintiff's first claim is construed to be one for deliberate indifference to his health or safety.  A prison official may be held liable for acting with "deliberate indifference" to an inmate's health or safety if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Id.* at 1491 (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1774, 128 L.Ed.2d 811 (1994)). To state a claim in this context, a prisoner must allege that (1) the officer was aware of a substantial risk of serious harm to the prisoner; (2) the officer was deliberately indifferent to that risk; and (3) the officer's conduct caused the prisoner's injuries. *See id*.

Plaintiff's Complaint alleges that he sustained severe injuries as a result of the negligence and recklessness of Officer Fauquier.  Though an officer's negligent conduct cannot support a claim under § 1983, s*ee Daniels v. Williams*, 474 U.S. 327, 336, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986); *Hernandez v. Florida Dept. of Corrections*, 281 Fed. Appx. 862, 866 (11th Cir. 2008), allegations of actions which are deliberate or reckless in the criminal sense may be sufficient to state a constitutional claim. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986).

In this case, Plaintiff alleges that, at the time of the accident, Officer Fauquier was driving "in excess of eighty miles an hour" on an unlit road, failed to maintain his lane, and collided with another car 'head-on.'" Though it remains to be seen whether these actions were sufficiently "reckless" so as to support a constitutional claim, the Court finds that it

would be premature to dismiss Plaintiff's claim for damages at this stage. If the allegations are true, Plaintiff could arguably prove a set of facts which would entitle him to relief. Plaintiff will, therefore, be allowed to proceed with this claim.

B. <u>Claims for Denial of Medical Care</u>

Plaintiff next alleges that he has repeatedly been denied needed medical care. A detainee clearly has a right to be provided with adequate medical care. *See Thomas*, 847 F.2d at 772. To state claim for violation of this right, however, a plaintiff must allege acts or omissions amounting to deliberate indifference to a serious medical need. *Id*. at 772-73; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). These allegations must satisfy both an objective and subjective component. *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), overruled in part on other grounds by *Hope v. Peltzer*, 536 U.S. 730, 739 (2002). Thus, a plaintiff must allege facts demonstrating (1) that he has an objectively serious medical need which poses a substantial risk of serious harm if left unattended, and (2) that the defendant had subjective knowledge of a risk of serious harm to the plaintiff but disregarded that risk. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to the level of a constitutional violation. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "[M]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Plaintiff's Complaint first alleges that Officers Fauquier and Bowman deliberately

denied him medical care and ignored his repeated claims of injury following the accident. Though the actual severity and obviousness of Plaintiff's injuries is still unclear, the Court finds it sufficient at the frivolity review that the officers were allegedly aware that Plaintiff was involved in a serious car accident and that they intentionally denied him medical care despite the fact that he claimed to be injured. Plaintiff's claims against these Defendants will thus be also allowed to proceed.

Plaintiff failed, however, to make sufficient allegations against Officers Smith and Sellers. Plaintiff's Complaint only alleges that Officer Smith was "qualified to instruct and correct a City of Byron police officer within the Standard Operation Procedures," was informed of the accident through "a dispatch from Officer Fauquier," and "ignored any possible danger to his arrested subject." The allegations involving Officer Sellers are similarly cryptic. Plaintiff alleges that Officer Sellers is "legally responsible for investigation of traffic accidents throughout the State of Georgia" and was "informed that Plaintiff had been removed from the accident before his arrival." Officer Sellers apparently completed a report of the accident and noted a complaint of neck pain.

The vague allegations against these Defendants are not sufficient to state a § 1983 claim for denial of medical care. Plaintiff fails to identify facts suggesting that either officer had subjective knowledge of a risk of serious harm to Plaintiff and disregarded that risk. According to the Complaint, neither officer was at the scene of the accident when Plaintiff complained of injuries, and apparently, neither officer had personal knowledge of whether Plaintiff needed or had been provided medical care after the accident.

It is thus RECOMMENDED that Defendants Officer Smith and Officer J. Sellers be

DISMISSED from this action.

Plaintiff also fails to arguably state a claim for damages against Defendants Nurse Elder and Dr. Ru. The Complaint plainly shows that an unnamed nurse examined Plaintiff the same day he submitted his medical request form and that, as requested, Nurse Elder then repeatedly called the Byron Police Department to inquire about his medical treatment. Though Plaintiff may have liked for Nurse Elder to have done more, the allegations in the Complaint do not suggest that she was in anyway indifferent to his serious medical needs.

The Complaint likewise fails to allege facts demonstrating that Dr. Ru was deliberately indifferent to Plaintiff's medical needs. According to the Complaint, Dr. Ru examined Plaintiff, ordered x-rays, and prescribed Plaintiff pain medication even though the x-rays showed that Plaintiff suffered no broken bones. These allegations fall well short of demonstrating that his medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris*, 941 F.2d at 1505. Plaintiff may disagree with the efficacy of the treatment received, or he may simply prefer a different course of treatment. These facts, however, will not sustain a claim for inadequate medical care. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir.1995). A "simple difference in medical opinion" does not demonstrate deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

It is accordingly RECOMMENDED that Plaintiff's claims for damages against Nurse Elder and Dr. Ru be DISMISSED.

The Court will, nonetheless, allow Plaintiff to proceed with his claim for injunctive relief against Defendant Dr. Ru. Again, this Court is required to construe the Complaint

liberally and accept all the allegations therein as true. The Complaint alleges that Plaintiff is in desperate need of medical care and that he "will be irreparably injured" if he is not properly treated. Because it is assumed, at this early stage, that Dr. Ru may be able to provide Plaintiff with (or order some type of) further medical care if it is shown to be necessary, Plaintiff has arguably stated a claim for injunctive relief.

### C. Other Potential Claims

In his Complaint, Plaintiff also makes several allegations unrelated to his constitutional claims: He alleges (1) that Officer Smith provided false testimony in his preliminary hearing; (2) that Officer Sellers included erroneous or false information in his report of the accident; and (3) that Officers Fauquier and Bowman violated state law or procedure when they removed him from the vehicle before the Georgia State Patrol and medical personnel arrived. It is unclear whether Plaintiff made these allegations in an attempt to state additional § 1983 claims. If he did, the claims are due to be dismissed.

The United States Supreme Court case of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), clearly precludes this Court from considering the false testimony allegations against Officer Smith. In *Younger*, the United States Supreme Court explained that federal courts must refrain from interfering with pending state criminal proceedings. *Id.* at 53. There are only three exceptions to the *Younger* doctrine: A district court need not abstain if "(1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised." *Hughes v. Attorney Gen. of Fla.*, 377 F.3d 1258, 1263 n. 6 (11th Cir. 2004).

The allegations in Plaintiff's Complaint do not suggest that this case falls into one of the three exceptions to the *Younger* doctrine. There are no allegations demonstrating clear bad faith or irreparable injury. The mere fact that Plaintiff must endure state criminal prosecution fails to demonstrate irreparable harm. *Younger*, 401 U.S. at 45. Plaintiff also has adequate alternatives in the state courts where constitutional issues can be raised. *See e.g.*, O.C.G.A. § 9–14–1(a) ("Any person restrained of his liberty . . . , except under sentence of a state court of record, may seek a writ of habeas corpus to inquire into the legality of the restraint."). The abstention doctrine accordingly applies in this case. *See Green v. Jefferson County Comm'n*, 563 F.3d 1243, 1250 (11th Cir. 2009).

Plaintiff likewise fails state any claim based upon Officer Seller's "false documentation" in the accident report. Nothing in the Complaint suggests that the alleged errors were intentional or malicious, nor do they explain how Officer Seller's errors may have violated Plaintiff's rights. Thus, as stated, the allegations do not give rise to § 1983 liability. *See Daniels*, 474 U.S. at 336.

Finally, none of Plaintiff's allegations related to possible violations of state law or procedure support an independent § 1983 claim. An alleged violation of state law may not serve as a basis for a § 1983 suit. *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983").

For these reasons, it is further RECOMMENDED that any attempted § 1983 claims based upon these allegations be DISMISSED.

## CONCLUSION

Having now conducted a preliminary review of Plaintiff's Complaint, as required by 29 U.S.C. § 1915A(a), the Court finds that the Complaint fails to arguably state a claim for damages against Officer Smith, Officer Sellers, Nurse Elder or Dr. Ru.  It is, therefore, RECOMMENDED that all claims for damages against those Defendants be DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).  To the extent that Plaintiff attempted to state § 1983 claims against Officers Fauquier and Bowman for alleged violations of state law or procedure, it RECOMMENDED that those claims also be DISMISSED under §1915A(b)(1).  Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order.

Plaintiff will, however, be permitted to proceed with all other claims against Officers Fauquier and Bowman and his claim for injunctive relief against Dr. Ru.  It is thus ORDERED that service be made against Defendants Fauquier, Bowman, and Ru and that these Defendants file a Waiver of Reply, an Answer, or such other response as may be appropriate under Rule 12 of the FEDERAL RULES OF CIVIL PROCEDURE, U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are also reminded of their duty to avoid unnecessary service expenses and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## **DUTY TO ADVISE OF ADDRESS CHANGE**

All parties shall, at all times, keep the clerk of this court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of any

change of address may result in the dismissal of a party's pleadings filed herein.

## DUTY TO PROSECUTE ACTION

Plaintiff is advised that he must diligently prosecute his complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a <u>certificate of service</u> indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the defendants from whom discovery is sought by the plaintiff. The defendants shall not commence discovery until such time as an answer or dispositive

motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE.  The deposition of the plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  <u>Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure</u>.

IT IS HEREBY ORDERED that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendants and granted by the court.  This 90-day period shall run separately as to each plaintiff and each defendant beginning on the date of filing of each defendant's answer or dispositive motion (whichever comes first).  The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.  The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: <u>except with written permission of the court first obtained</u>, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed FIFTEEN (15) requests to each party.  No party shall be

required to respond to any requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the court in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the court.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

IT IS FURTHER ORDERED AND DIRECTED that collection of monthly payments from plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall

16

remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from the plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event plaintiff is released from custody and fails to remit payments. In addition, plaintiff's complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED**, this 12th day of December 2011.

                                        S/STEPHEN HYLES
                                        UNITED STATES MAGISTRATE JUDGE