IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANTHONY BOWDEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 5:11-CV-437-MTT-MSH |
| | : | 42 U.S.C. § 1983 |
| NATHANIEL FAUQUIER, *et al.,* | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Presently pending before the Court are Plaintiff's and Defendants' Motions for Summary Judgment. (ECF Nos. 88, 94.) Both motions have been responded to and are ready for review. For the reasons stated below, Defendants' motion should be granted and Plaintiff's motion should be denied.

### DISCUSSION

**I.   Statement of Facts**

Plaintiff Anthony Bowden, an inmate currently housed at the Coastal State Prison in Garden City, Georgia, has filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983. (Compl. 4, ECF No. 1). Plaintiff's Complaint alleges that on July 30, 2011, he was riding in the back seat of a City of Byron police car driven by Defendant Officer Fauquier of the City of Byron Police Department. (Compl. 2). Plaintiff alleges that Fauquier was driving on the wrong side of the road in excess of eighty miles per hour when the car was involved in a "head-on" collision. (*Id.*) Plaintiff, whose hands were

cuffed behind his back and not wearing a seatbelt, alleges he was injured in the accident. (*Id.*)  After the accident, Plaintiff contends he informed the Defendants that he was 'hurt," but the Defendants failed to offer him any medical assistance. (*Id.* at 3.)  Plaintiff alleges he was then taken to the Byron Police Department and subsequently transported to the Peach County Jail where he was again denied medical care by the nursing staff. (*Id.*)

Plaintiff states that Defendant Officers Fauquier and Bowman denied him medical attention for the following reasons: 1) so that he would not be a potential witness for criminal charges against the Defendant Officers; 2) so the Defendant Officers could salvage their jobs despite the police misconduct; and 3) to create a "smoke screen" and "cover up" for the fraudulent acts of the Defendant Officers. (*Id.*)  Based on the above facts, Plaintiff has brought claims against the Defendant Officers alleging violations of his Fifth, Eighth and Fourteenth Amendment rights.

## II.   Standard for Motion for Summary Judgment

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party=s favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248.  A

factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

Additionally, the Middle District of Georgia, under Local Rule 56, requires movants to attach to their motion for summary judgment a "separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried." The non-movant must then respond "to each of the movant's numbered material facts[, and] [a]ll material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. Local R. 56.

The law provides that the party against whom summary judgment is sought must be given ten (10) days' notice of the summary judgment rules. In addition, the party against whom a Motion for Summary Judgment has been filed has the right to file affidavits or other material in opposition to a summary judgment motion. If he fails and refuses to file any affidavits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law.

### III. Deliberate Indifference

As stated above, Plaintiff alleges that the Defendants violated his rights by being deliberately indifferent to his medical needs. (Pl.'s Compl. 5, Pl.'s Supp. to Compl. 2; ECF Nos. 1, 12.) "Deliberate indifference to a prisoner's serious medical needs requires (1) an objectively serious medical need and (2) a defendant who acted with deliberate indifference to that need." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th

Cir. 2010). "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted). Furthermore, a plaintiff must show that the defendant "(1) [had] subjective knowledge of a risk of serious harm; (2) disregard[ed] . . . that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal quotation marks and citations omitted) (alterations in original). It is clear from the record that Defendants were not deliberately indifferent to Plaintiff's medical needs.

    A.    <u>No objectively Serious Medical Need</u>

The Eleventh Circuit has held that a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations omitted). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000) (citation omitted).

A review of the pleadings, as well as the attached exhibits, reveals that on the night of July 30, 2011, Defendants Fauquier and Bowman were conducting a sobriety checkpoint in Byron, Georgia. (Defs.' Br. in Supp. of Mot. for Summ. J. 2; Nathan Fauquier Aff. ¶ 3, ECF No. 94-1.) Plaintiff stopped at the checkpoint and Defendant Fauquier noticed that Plaintiff did not appear coherent, his eyes were glazed, his speech

4

was slurred and his vehicle smelled of alcohol.  (Fauquier Aff. ¶ 5.)  Plaintiff was told to exit his vehicle but drove off, striking another officer.  (Fauquier Aff. ¶ 7.)  Defendant Fauquier and two other officers set off on a high speed chase to apprehend Plaintiff. (Fauquier Aff. ¶ 8.)   Plaintiff thereafter crashed his vehicle and ran into the woods. (Fauquier Aff. ¶ 10; Cpl. Lee Smith Aff. ¶ 8.)  Plaintiff was apprehended by Cpl. Smith and Defendant Fauquier, and they both noticed cuts and scratches on Plaintiff.  (Fauquier Aff. ¶ 14, Smith Aff. ¶ 15.)

Plaintiff was arrested and charged with several offenses including: felony fleeing or attempting to flee police; speeding in excess of maximum; driving under the influence of alcohol; and aggravated assault on a police officer. (Fauquier Aff. ¶ 17.) Crawford County EMS arrived to check on Plaintiff, but Plaintiff told the paramedics that he was alright and refused medical treatment.  (Smith Aff. at ¶ 13.)  Plaintiff was then placed in the backseat of Defendant Fauquier's police vehicle to be taken to the Byron Police Department. (*Id.* at ¶ 16.)

When placed in Defendant Fauquier's patrol vehicle, Plaintiff was handcuffed, but was not secured by a seatbelt.  (Fauquier Aff. ¶ 16.)  Defendant Fauquier states that Plaintiff's behavior caused him to believe if he reached across Plaintiff to seatbelt him, Plaintiff might attempt to harm him.  (*Id.*)  While transporting Plaintiff to the Byron Police Department, Officer Fauquier was involved in an accident with another vehicle. (*Id.* at ¶ 18.)  Defendants state that "[a] recording from Officer Fauquier's police vehicle shows that Officer Fauquier was traveling at about 35 mph at the time of collision,

around 10:40 pm, and at no time does the recording show that Officer Fauquier was driving at 80 mph." (Bryan Hunter Aff. ¶ 5; ECF No. 94-1.)

Georgia State Patrol Officer John Sellers also responded to Fauquier's accident. (John Sellers Aff. ¶ 3, ECF No. 94-1.) Officer Sellers visually assessed Plaintiff and observed that Plaintiff had no obvious injury. (*Id.* at ¶ 6.) Officer Sellers asked Plaintiff if he was injured, and Plaintiff indicated only that he had neck pain, but Plaintiff refused Seller's offer for medical treatment. (*Id.* at ¶¶ 5, 6.)

Thereafter, the Peach County EMS team responded to the accident and was directed to check on Plaintiff. (Freeman Nottingham Dep. 8:18-23; 23:4-25; ECF No. 94.) Paramedic Nottingham then spoke with Plaintiff and assessed him. (Nottingham Dep. 26:8-14.) Nottingham stated that he saw no visual sign of obvious injury to Plaintiff and that Plaintiff continually told Nottingham that he was not hurt. (*Id.* at 25:1-3; 26:16-25; 27:7-19.) After Plaintiff answered several general questions about himself and repeated that he "was okay," Nottingham determined that Plaintiff was able to refuse treatment. (*Id.* at 33:4-9; 34:1-6.)

At no time during Nottingham's interaction with Plaintiff did Plaintiff tell him he had injured his shoulder or any bones, nor did he state that his bones felt like they were broken. (*Id.* at 28:20-25; 35:5-15.) Further, Plaintiff never told Nottingham he was in any pain, did not ask for pain medication, and did not ask for any medical treatment. (*Id.*) In fact, Plaintiff refused all medical treatment offered by Nottingham. (*Id.* at 29:1-10; Bowman Aff., Ex. 1.) Defendant Officer Bowman then arrived and transported Plaintiff to the Byron Police Department for booking. (Scott Bowman Aff. ¶ 6.)

6

Defendant Fauquier had no further contact with Plaintiff and avers that Plaintiff never told him he was hurt or in any way injured. (Fauquier Aff. ¶ 21, 25.)

Once at the Byron Police Department, Officer Lee Smith booked Plaintiff. (Lee Smith Aff. ¶ 12; ECF No. 94-1.) Officer Smith stated that he saw no indication of obvious injury and that Plaintiff failed to complain of any injury or make any request for medical attention. (Smith Aff. ¶ 13.) At around 5:30 a.m. on July 31, 2011, Plaintiff was transferred from the Byron Police Department to the Peach County Sheriff's Department. (*Id.*) Officer James Randolph Perry then took custody of Plaintiff and booked him in at the jail. (James Perry Aff. ¶ 3; ECF No. 94-1.) At this point, Defendants Fauquier and Bowman relinquished control of Plaintiff and had no further dealings with him. (*Id.*) Officer Perry noted on Plaintiff's records that Plaintiff had no visible injury or pain which would suggest any need for emergency care. (*Id.* ¶ 7.) Officer Perry even asked Plaintiff if he was injured and was told by Plaintiff that he had only cuts and scrapes on his neck and arms. (*Id.*) The next day, on August 1, 2011, Plaintiff had an initial medical visit with the jail Nurse, Versie Elder, L.P.N. (Versie Elder Aff. ¶ 6; ECF No. 94-1.) Nurse Elder saw superficial abrasions and cleaned those with hydrogen peroxide. (*Id.*) Plaintiff did not complain of any other injuries and Nurse Elder did not observe any other injuries. (*Id.*) It was not until almost a month later that Plaintiff complained of any injury to his right elbow, right collarbone, right shoulder, right chest area, right wrist, pain in his upper, middle and lower back, and frequent migraine headaches. (Dr. John Vu Aff. 7; ECF No. 94-1.)

Legal precedent, as noted supra, dictates that the Plaintiff must be able to establish that his medical conditions were indeed a serious medical need. If he were able to establish that his version of the facts is accurate, Plaintiff would then have to prove that the Defendants had knowledge that a failure to treat the condition would cause harm, that they disregarded the risk, and that the failure to treat the condition was more than mere negligence. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

With regard to Plaintiff's assertion that his wrist, shoulder, collarbone, back pain and headaches were serious medical needs to which the Defendants were deliberately indifferent, Defendants have submitted affidavits, as well as medical records from Plaintiff's time at the Peach County Jail to support their position. In his response to Defendants' Motion for Summary Judgment (ECF No. 99) and in his own Motion for Summary Judgment (ECF No. 88), Plaintiff asserts that the Defendants put him in danger of serious bodily harm. In support of his assertion, Plaintiff submitted a Request for Medical Services form dated May 1, 2012, wherein he stated that he was suffering from a neck injury which causes him to black out, and that he suffered from repeated migraines. (ECF No. 88-1.) Plaintiff further stated that his symptoms began after a "car crash" on July 30, 2011. (*Id.*) This evidence, however, fails to support his contentions that the Defendants were deliberate from the date and time of the events in question.

Ultimately, the court finds that, based on the pleadings, affidavits, and exhibits, Plaintiff has failed to show that his alleged injuries were serious medical needs. The Plaintiff has failed to provide any evidence, other than his own claims, that his injuries were as severe as he claimed. As such, Plaintiff has failed to meet the first prong of the

8

deliberate indifference standard as set out in *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999). Thus, it is not necessary to determine if the Defendants had subjective knowledge of a risk of serious harm; that the defendant disregarded the risk; or that their conduct was more than mere negligence. *See Brown*, 387 F.3d at 1351. Because the Plaintiff has failed to establish that any genuine issues of material fact remain as to whether the Defendants were deliberately indifferent to Plaintiff's medical needs, his claims must fail.

## IV. Qualified Immunity

Defendants further contend that Plaintiff's action should be dismissed because they are entitled to qualified immunity. (Mot. for Summ. J. 1, ECF No. 14-1.) Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established right of which a reasonable person would have known. In sum, qualified immunity is a guarantee of fair warning. *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Specifically, "[t]he doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (internal quotation marks omitted).

Under qualified immunity analysis, the public official must first prove he was "engaged in a 'discretionary function' when he performed the acts of which plaintiff

complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004). In this case, it is undisputed that Defendants Fauquier and Bowman were acting within the scope of their discretionary authority as police officers when they apprehended Plaintiff and transported him to the Byron Police Department. *See Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). Because that determination was made, the burden then shifts to Plaintiff to show that the Defendants are not entitled to qualified immunity. *Id.*

The first qualified immunity inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, the facts show that the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009) (based on the circumstances of the particular case, the courts are now able to decide which of the two inquiries should be addressed first); *Seigert v. Gilley*, 500 U.S. 226, 232 (1991). The second qualified immunity question is whether the right violated was clearly established at the time of the alleged wrongful acts. *Id.* at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that he was doing violates that right." *Id.* If either element of the qualified immunity test is decided against the Plaintiff, the Defendant is entitled to qualified immunity.

The evidence presented, as noted above, is examined by this court in a light more favorable to the Plaintiff, as is required by law. *See Welch v. Celotex Corp.*, 951 F.2d

1235, 1237 (11th Cir. 1992). In this case, Plaintiff claimed that Defendants were deliberately indifferent to his serious medical needs following a motor vehicle accident on July 30, 2011. (Compl. 5.) However, it has been determined that there was no serious medical need to which the Defendants could have deliberately indifferent. Thus, Plaintiff is unable to establish that a constitutional right has been violated and that the Defendants are not entitled to qualified immunity. As such, it is found that Defendants Fauquier and Bowman are entitled to qualified immunity as to the claims made against them by Plaintiff.

## CONCLUSION

The Eleventh Circuit has held that on a motion for summary judgment, a plaintiff cannot rest on his conclusory allegations to create a genuine issue of material fact as to his claims. *McCarley v. KPMG Int'l,* 293 F. App'x 719, 722 (11th Cir. 2008). Since there is no evidence in the record which establishes that any of Plaintiff's constitutional rights have been violated, it is recommended that Defendants' Motion for Summary Judgment be granted.

WHEREFORE, IT IS HEREBY RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED for the above stated reasons. Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the United States District Judge within FOURTEEN (14) days after being served with a copy hereof.

SO RECOMMENDED, this 5th day of October, 2012.

S/ STEPHEN HYLES  
UNITED STATES MAGISTRATE JUDGE